**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Frederick Stuhr, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>United States Army Corps of Engineers, *et al.*,<br><br>　　　　　Defendants. | Case No. 2:23-cv-3357-RMG<br><br><br>**ORDER AND OPINION** |

Before the Court is a motion to intervene by American Mitigation Company ("AMC"). (Dkt. No. 27). Federal Defendants do not oppose the motion. (Dkt. No. 30). Plaintiffs oppose the proposed intervention. (Dkt. No. 31). For the reasons below, AMC's motion is denied.

## I.     Background

This suit arises from Federal Defendants' approval of Point Farm MB, LLC's ("Point Farm") plan to establish the Point Farm Mitigation Bank in the North Edisto River watershed of South Carolina. Pursuant to this plan, the U.S. Army Corps of Engineers, Charleston District ("Corps") approved a Mitigation Banking Instrument ("MBI") developed and executed by AMC as required by statute. *See* Clean Water Act, 33 C.F.R. § 332.1. As the asset manager of Point Farm Mitigation Bank, AMC represents that it "has invested hundreds of thousands of dollars in creating Point Farm Mitigation Bank" and that its asset management agreement "provides financial incentives for the successful development and management of the Mitigation Bank." (Dkt. No. 27 at 2). AMC cites its "investment-backed expectations" and "interests in a timely decision preserving approval of the Point Farm Mitigation and in developing the Mitigation Bank" in support of its intervention, which it contends are not adequately represented by Federal Defendants. (*Id.* at 3). AMC explains that Federal Defendants' interests are instead "defined by

1

the public interest and their statutory mandates," creating the possibility that any decision or settlement of the present action could "profoundly and adversely impact AMC" while being "unobjectionable to the Federal Defendants." (Dkt. No. 32 at 3). Plaintiffs oppose the proposed intervention on the grounds that AMC "has no independent 'claims or defenses' relating to the challenge to the regulatory approvals of the Federal Defendants," and express concern that intervention at this stage in the case would result in undue delay. (Dkt. No. 31 at 4).

## II.    Legal Standard

Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). A district court "has broad discretion in granting permissive intervention" and Rule 24(b) is "construed liberally in favor of intervention." *Backus v. South Carolina*, No. 3:11-CV-03120-HFF, 2012 WL 406860, at *2 (D.S.C. Feb. 8, 2012). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the application of the rights of the original parties." Fed. R. Civ. P. 24(b)(3). A court may also allow intervention in the interests of judicial economy where a common question of fact exist, such that factual determinations by a jury would directly impact the intervening party. *Backus*, 2012 WL 406860, at *2.

## III.    Discussion

### A. Timeliness

The Court finds that AMC's motion is timely. Timeliness "is to be determined by the court in the exercise of its sound discretion" considering "all the circumstances." *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 366 (1973). AMC represents that it was acquired by Westervelt Ecological Services in 2023 and moved to intervene upon learning of

2

this pending litigation. (Dkt. No. 27 at 2-3).  Aside from Federal Defendants' motion to dismiss (*see* Dkt. No. 11) and subsequent motion for reconsideration (*see* Dkt. No. 18), there has been no substantive briefing in this case.  Federal Defendants have since lodged their respective administrative records regarding the disputed agency decisions in this action, and the Parties have agreed to a briefing schedule setting deadlines for challenging the administrative record and/or seeking additional evidence.  (*See* Dkt. Nos. 24, 25).  This briefing has not yet taken place.

Given the early stage of the proceedings, the Court contemplates that AMC's motion to intervene is timely made.

### B.  Common Question of Law or Fact

The Court next examines whether AMC has a claim or defense that shares a common question of law or fact as the suit between Plaintiffs and Federal Defendants, in which Plaintiffs challenge regulatory decisions of the Corps and EPA. *See* Fed. R. Civ. P. 24(b)(1)(B).  AMC asserts that this claim is its "rights vis-à-vis the challenged Corps decision," contending "[i]mplicitly and explicitly, the Plaintiffs Complaint and the allegations therein take issues with elements of the Corps' record in this matter" which "was relied upon by the Federal Defendant's [sic] in approving the MBI."  (Dkt. No. 27 at 2-3).  AMC argues that "[a]s the asset manager for Mitigation Bank, AMC will be subject to any conditions or continuing obligations included in a Corp's authorization, the existence and substance of which are very likely to be impacted by this litigation." (Dkt. No. 32 at 3).  Plaintiffs counter that AMC "has no 'claim or defense' of its own" and "merely wants to support and second the defense of the approvals by these regulatory agencies." (Dkt. No. 30 at 3).

That AMC may be financially impacted by the outcome of this litigation is not enough to support permissive intervention.  In a separate challenge to the Corps' approval of a highway

3

project, financial backers sought to intervene on the basis of their lobbying and funding efforts as well as expected future financial returns from the planned construction. *S.C. Coastal Conservation League v. United States Army Corps of Engineers*, Charleston Dist., No. 2:17-CV-3412, 2019 WL 13293580, at *4 (D.S.C. Jan. 30, 2019). The court reasoned:

> [I]t is unclear how these matters have any bearing on the question of whether Defendants, all government entities and officials, complied with applicable environmental regulations—which is the gravamen of this case. In a situation where, as here, the existing Defendants are already "zealously pursuing the same ultimate objectives" that the proposed intervenors intend to advance, and where introduction of the proposed intervenors would needlessly complicate further progress of the case, permissive intervention is inadvisable.

*Id.* at 5. A distinction arises from the fact that AMC was directly involved in the approval and ongoing management of the subject of the challenged agency action, whereas the proposed intervenors in *S.C. Coastal* did not hold the permit resulting from the federal agencies' approval of the highway project. *See id.* at *4. Regardless, the fact that AMC's investment-backed expectations may be impacted is corollary to the question of whether the project was lawfully approved by the Corps and EPA in the first place. "Business aspirations are not legal interests," and this Court is not persuaded that AMC's financial interest in this action creates a separate legal interest demanding representation in this case. *Id.*

The Court is also persuaded by the reasoning in *Ohio Valley Environmental Coalition v. McCarthy*, where the court denied intervention by an association of coal producers. The court acknowledged that the association "seeks intervention in order to argue that EPA has complied with the agency's duties under the CWA [] [b]ut EPA already zealously advances this argument, and EPA . . . is in the best position to argue its own compliance." *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 31 (S.D.W. Va. 2015). As a result, the court reasoned that the intervention would be "likely [only] to result in duplicative briefing adding a layer of

4

unwarranted procedural complexity" and "require expending additional court resources without a corresponding benefit attainable only by intervention rather than amicus participation." *Id.* The court decided to grant amicus status to the association to afford it the chance to brief the coal industry's perspective on the issue, while again noting that "this is an administrative review action where EPA must defend its decision by offering the actual reasoning behind that decision." *Id.* at 32.

"[A]s [the] administrative agenc[ies] possessing expertise in the field of environmental science and being charged with enforcing the CWA," the Corps and EPA are in "the best position to argue [their] own compliance" with the APA and CWA in approving the Point Farm Mitigation Bank. *See id.* at 31. Presumably, AMC's arguments would only seek to affirm that compliance by reference to the Corps' record. (*See* Dkt. No. 27 at 3) ("Plaintiffs allege that the Corps and EPA violated the CWA and the APA in approving the final MBI" and "take issue with elements of the Corps' record . . . [which] was relied upon by the Federal Defendants in approving the MBI."). That AMC holds investment-backed expectations in the mitigation bank's ongoing operation and future success has no bearing on the question before this Court, which is whether the Federal Defendants adhered to administrative law in authorizing the project. The Court believes intervention in this case would result only in duplicative briefing as to the Federal Defendants' compliance with the APA and CWA by reference to the Corps' record, without any resulting benefit.

### C.    AMC's Adequate Representation Argument

AMC's argument that its interests are not adequately represented by Federal Defendants is one more properly suited for a motion for intervention as of right pursuant to Rule 24(a), rather than the permissive intervention AMC moves for pursuant to Rule 24(b). The Court nonetheless

briefly entertains this argument.  AMC posits that it could disagree with a hypothetical settlement Federal Defendants ultimately reach (*see* Dkt. No. 32 at 3), but "the relevant and settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." *Stuart v. Huff*, 706 F.3d 345, 353 (4th Cir. 2013).  In *Huff*, the Fourth Circuit required a strong showing of inadequacy where the proposed intervenors shared the "same ultimate objective" as a government agency, ultimately rebuffing the intervenors' argument that their interest in that case was "more 'specific' than the state's general interest" in defending a statute subject to constitutional challenge.  *Id.*  The court explained that "stronger, more specific interests do not adverse interests make – and they surely cannot be enough to establish inadequacy of representation since would-be intervenors will nearly always have intense desires that are more particular than the state's (or else why seek party status at all)."  *Id.*

In essence, AMC argues that it has a more specific interest than the Federal Defendants given its financial stake in the outcome of this litigation.  But Federal Defendants and AMC share the same ultimate objective – upholding the approval of the Point Farm Mitigation Bank.  The Federal Defendants must do so via reference to their own administrative records, which they have lodged before this Court and which are subject to review and challenge by Plaintiffs before this case may proceed to briefing on the merits. (*See* Dkt. No. 24, 25).  Until such time as the Court determines whether or not the Federal Defendants lawfully or unlawfully approved the Mitigation Bank, there is no claim or defense that AMC can assert that will contribute to the resolution of this dispute at this time.  As AMC itself notes, the case is centered on review of the agency's administrative record and will not involve intensive factual disputes outside of this record.  (*See* Dkt. No. 27 at 4).  It is thus unclear to this Court what benefit will be served by adding AMC at this stage.

### D.  Undue Delay or Prejudice

In light of the Court's determination that AMC does not have an independent claim or defense in this action challenging the regulatory actions of Federal Defendants, the Court need not examine the potential for undue delay or prejudice caused by allowing permissive intervention in this case.  As remarked by the Fourth Circuit, "[t]here is much to be said, frankly, for simplifying rather than complicating the litigation process," and the Court sees no reason to complicate the present suit by permitting AMC to intervene. *Huff*, 706 F.3d at 354.

### IV.    Conclusion

In light of the foregoing, the Court **DENIES** AMC's motion to intervene.

**AND IT IS SO ORDERED.**


 s/Richard M. Gergel
Richard Mark Gergel
United States District Judge


April 29, 2024
Charleston, South Carolina


7