# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Frederick Stuhr, *et al.*,<br><br>    Plaintiffs,<br>    v.<br><br>United States Army Corps of Engineers, Charleston District, *et al.*,<br><br>    Defendants. | Case No. 2:23-3357<br><br>**ORDER AND OPINION** |

Before the Court is Plaintiffs' motion for summary judgment. (Dkt. No. 43). Defendants opposed the motion and filed a cross-motion for summary judgment. (Dkt. No. 48). Plaintiffs replied in further support of their motion and opposed Defendants' cross-motion. (Dkt. No. 51). Defendants replied. (Dkt. No. 52). For the reasons set forth below, the Court denies Plaintiffs' motion, grants in part Defendants' motion and dismisses the case without prejudice because Plaintiffs lack standing to bring their claims.

## I.     Background

This suit arises from Defendants' approval of the Point Farm Mitigation Bank ("PFMB") and verification of a Nationwide Permit 27 authorizing aquatic habitat restoration, establishment, and enhancement activities pursuant to the creation of the mitigation bank. The PFMB comprises a 2,026 acre-tract of land on the western end of Wadmalaw Island in Charleston County, South Carolina and contains 878.43 acres of uplands and freshwater wetlands and 1,148.21 acres of tidal marsh. (Dkt. No. 9, ¶ 51). Plaintiffs allege that Defendants violated the APA in approving the MBI and granting NWP 27 approval for the project. (*See generally id.*). Specifically, Plaintiffs contend that the mitigation bank is invalid because "[t]he salt marsh is not under threat" and "to the extent the threat posed to the salt marsh is upland development, that threat has not been

removed [b]y only adding a 100' buffer to an already existing 50' buffer, while leaving 700+ acres of adjoining highland available, according to the property owner, to intensive residential development." (*Id.*, ¶ 56). Plaintiffs argue the U.S. Army Corps acted in an arbitrary and capricious manner by authorizing the mitigation bank despite contested ownership over the mitigation site, citing a finding by the South Carolina Court of Common Pleas that Point Farm's ownership could not be established where the State of South Carolina was not a signatory to the easement. (Dkt. No. 43-1 at 18-20). With regards to the Corps' approval of the Nationwide Permit 27 ("NWP 27"), Plaintiffs argue such approval was unlawful where "the project is highly controversial and not in the public interest," citing "unanimous agency and public concern over the 'ownership issue' and lack of threat that, if allowed to become the norm, threatens the efficacy of the mitigation provisions of the Clean Water Act." (*Id.* at 2).

The cross motions for summary judgment are ripe for this Court's review.

## II.    Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am.*

*Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving part must demonstrate specific, material facts exist that give rise to a genuine issue to survive the motion for summary judgment. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.    Discussion

The Court first considers Defendants' argument that Plaintiffs lack standing to bring their claims. (Dkt. No. 48 at 3). To be justiciable, a plaintiff must show (1) "that he 'has sustained or is immediately in danger of sustaining some direct injury . . . or threat of injury [that is] both 'real and immediate,' not 'conjectural' or 'hypothetical'"; (2) that is fairly traceable to "the challenged official conduct"; and (3) the injury "is likely to be redressed by a favorable judicial decision." *Shenandoah Valley Network v. Capka*, 669 F.3d 194, 202 (4th Cir. 2012). "To demonstrate standing at the summary judgment stage, a plaintiff must set forth evidence of an injury in fact in addition to that provided in the complaint, which will be taken as true for purposes of deciding the motion. This injury must be concrete, particularized, and not conjectural or hypothetical." *Pye v. United States*, 269 F.3d 459, 467 (4th Cir. 2001). "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992).

Defendants argue that Plaintiffs "have not presented any facts to show that standing exists *now*," explaining that, because construction of the PFMB has ended, Plaintiffs no longer suffer any injury redressable by this Court. (Dkt. No. 48 at 26). Plaintiffs cite as injurious: "the approval of the MBI and NWP 27" which "set an unlawful precedent," increased traffic on Point Farm Road due to construction vehicles and the threat of future development on the land adjacent to the mitigation bank. (*See* Dkt. Nos. 51-1—51-9). Plaintiffs argue that that the completion of construction modifying the wetlands in accordance with the PFMB's approval "has no relevance to the issue of whether the Federal Defendants acted arbitrarily and capriciously in approving the bank and to whether the bank complies with federal law and is capable of being used for the sale of mitigation credits under that law." (Dkt. No. 56 at 1-2). Per Plaintiffs, their injuries "are not the modification of the wetlands but are, rather, approval of the mitigation bank that allows for its operation and the selling of credits for wetlands and buffers that are already protected as a practical matter to offset wetland impacts in other areas of Charleston County." (*Id.* at 4).

"[F]or the League to have Article III standing to challenge the Corps' approval of the Final Mitigation Banking Instrument, its members must have suffered or be imminently threatened with suffering a concrete and particularized injury in fact that is fairly traceable to the Corps' approval of the Final Mitigation Banking Instrument and is likely to be redressed by a favorable judicial decision." *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 483 (4th Cir. 2015). In *S.C. Coastal Conservation League*, this Court considered whether environmental plaintiffs' challenge to a mitigation bank approval was moot where construction of the mitigation bank had already been completed. No. 2:13-CV-1543-RMG, 2014 WL 11619161 (D.S.C. July 11, 2014), *aff'd*, 89 F.3d 475 (4th Cir. 2015). This Court found that plaintiffs lacked standing where "the harm sought to be enjoined – preventing the intrusion of brackish water into

the freshwater impoundments – ha[d] already occurred." *Id.*, 2014 WL 11619161, at *2. Here, the same considerations apply regarding the injuries Plaintiffs alleged due to construction of the mitigation bank— the "noise, dirt, traffic, and congestion caused by the construction of the brackish lakes and other physical changes inherent in establishing the MBI." (Dkt. No. 51 at 5).

Plaintiffs' other alleged injury—that the approval of the MBI sets an unlawful precedent because the land covered by the PFMB was purportedly subject to existing conservation measures—does not "impair[] a separate concrete interest of the plaintiff[s]" and thus is not a redressable injury for standing purposes. *Pye*, 269 F.3d at 467. To borrow the Defendants' phrasing, the Court "fail[s] to see how Plaintiffs could be injured from the environmentally beneficial activities involved here, i.e., the restoration, enhancement, and preservation of tidal marsh and associated natural resources that Point Farm MB, LLC is undertaking" in tandem with the creation of the PFMB. (Dkt. No. 48 at 27). "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Laidlaw*, 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). Certainly, the establishment of a conservation easement cannot be said to cause injury to Plaintiffs by diminishing the aesthetic and recreational values of the area. As in *South Carolina Coastal Conservation League v. U.S. Army Corps of Eng'rs*, Plaintiffs' disagreement with the wisdom of Defendants' granting of the PFMB does not establish their standing to bring the present claims where they cite no concrete injury resulting from the agency approval. *See id.* at 789 F.3d at 483–84. And while Plaintiffs contend that "intensive development remains possible," such injury is, at this point, nothing more than speculative. (Dkt. No. 9, ¶¶ 19-20). Because "'allegations of *possible* future injury' are not sufficient" to establish standing, the Court finds that Plaintiffs' purported injury is "too speculative

5

for Article III purposes." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

IV.     **Conclusion**

In light of the foregoing, Plaintiffs' motion for summary judgment is **DENIED** and Defendants' motion for summary judgment is **GRANTED IN PART**. This case is **DISMISSED WITHOUT PREJUDICE**.

**AND IT IS SO ORDERED.**

 _s/ Richard M. Gergel
Richard Mark Gergel
United States District Judge

May 1, 2025
Charleston, South Carolina